UNITED STATES of America, Appellee,

v.

Michael James DeLUTIS, a/k/a John Doe, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Adolf "George" EUNIS, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Shirley Mae EUNIS, Defendant, Appellant.

Nos. 1098, 1180, 1188.

United States Court of Appeals, First Circuit.

Argued Sept. 12, 1983.

Decided Dec. 6, 1983.

Judd J. Carhart, Boston, Mass., with whom Carhart, Bonistalli & McCarthy, Boston, Mass., was on brief, for Michael James DeLutis, a/k/a John Doe.

Alfred Paul Farese, Everett, Mass., with whom Ronald Ian Segal, Concord, N.H., and John Tramonti, Jr., Providence, R.I., were on brief, for Adolf "George" Eunis and Shirley Mae Eunis.

Patty Merkamp Stemler, Attorney, Dept. of Justice, Washington, D.C., with whom Lincoln C. Almond, U.S. Atty., and Edwin J. Gale, Sp. Atty., Providence, R.I., were on brief, for appellee.

Before CAMPBELL, Chief Judge, COWEN * and SKELTON,* Senior Circuit Judges.

SKELTON, Senior Circuit Judge.

The appellants, Michael DeLutis, George Eunis and wife, Shirley Eunis, were convicted in the United States District Court for the District of Rhode Island, after a jury trial, of conspiracy to distribute and to possess with intent to distribute cocaine (Count 1), in violation of 21 U.S.C. 846. Also, appellants George and Shirley Eunis

* Of the Federal Circuit, sitting by designation.

were convicted on two counts each charging possession with intent to distribute cocaine, in violation of 21 U.S.C. 841(a)(1), and they were convicted on two and one counts respectively charging use of a telephone to facilitate the distribution of cocaine, in violation of 21 U.S.C. 843(b). In addition, George Eunis was convicted of distributing cocaine, in violation of 21 U.S.C. 841(a)(1). Appellant DeLutis was sentenced to 18 months' imprisonment. Appellant George Eunis was sentenced to a total of eight years' imprisonment and three years' special parole. He was sentenced to five years' imprisonment on the conspiracy count and to concurrent terms of three years' imprisonment on each of the substantive counts, to be followed by three years' special parole. The conspiracy sentence was ordered to run consecutively to the substantive sentences. Shirley Eunis was sentenced to concurrent terms of two years' imprisonment on each count, to be followed by three years' special parole.

The evidence shows that George and Shirley Eunis were cocaine distributors operating out of Johnston, Rhode Island. They purchased the cocaine from time to time from Donald Taglianetti and his cousin, Raymond Cardullo, in Ft. Lauderdale, Florida.[1] Their practice was to obtain the cocaine, divide it, and then sell it to several local distributors, including one Alfred Smith who consumed some of it and sold the rest for a profit. Beginning on December 21, 1981, Smith made several trips to Ft. Lauderdale with George Eunis to get a supply of cocaine, which was then transported to Rhode Island in Smith's suitcase and upon arrival Smith would hand over the cocaine to Eunis for disposition. Eunis would then give some of the cocaine plus some cash to Smith for arranging and participating in the trips. Shirley Eunis accompanied Smith and George on some of the trips and participated in the cocaine transactions. These trips and cocaine distributions and sales continued from October 1981, to mid-March 1982.

Smith became an informant for the FBI and the Rhode Island state police in early February 1982. Thereafter, the FBI used surveillance and tape recordings to monitor Smith's cocaine dealings with the Eunises and their associates.

Smith and the Eunises made a fourth trip to Florida to purchase cocaine on February 13, 1982. The main purpose of the trip was to familiarize Shirley with the business so that she could take charge of it when George left on February 16, 1982, to serve a prison sentence for an offense not related to the instant case. Cocaine was purchased on this trip from Taglianetti by George who gave it to Smith to transport to Rhode Island. On arrival in Rhode Island, Smith returned the cocaine to George.[2]

The final trip to Florida was made by Smith and Shirley on March 13, 1982. On that trip, they purchased cocaine from Taglianetti, which was paid for in cash by Shirley. She gave the cocaine to Smith, who transported it to Rhode Island. Shirley was met at the airport on Sunday, March 15, 1982, by a friend, Denise Marsalla, who took her home. Smith followed in a separate car. Upon arriving at Shirley's house, Smith opened his suitcase and delivered the cocaine to Shirley who paid Smith in cash. Smith then left the house and signalled to waiting officers, who entered the house with a search warrant and arrested Shirley. The officers then searched the house and found the bag of cocaine in the kitchen closet, $2,500 in cash on the table, a scale, Shirley's airline tickets and baggage stubs for the Florida trip, and various narcotic paraphernalia.

While the search was being conducted, the telephone rang and agent William Shay answered, and a man asked for Shirley. Shay answered that Shirley was busy. The caller then asked Shay to have Shirley call

---

1. Donald Taglianetti and Raymond Cardullo were also convicted in this case, but they have not perfected an appeal.

2. Various telephone calls were made between the Eunises and Smith in connection with the Florida trips and the purchase and sale of the cocaine described herein. These calls formed the basis of the convictions of the Eunises for violating 21 U.S.C. § 843(b).

"Mike," and he left a phone number. He told Shay that it was important and that he was waiting around. Then he asked Shay, "is the stuff in?" Shay replied that it was. About an hour later Shay telephoned Mike and told him that Shirley said for him to come on over. Mike then said, "is the stuff ready?" and Shay told him that it was. About twenty minutes later, appellant De-Lutis came to the Eunises' home and identified himself as "Mike." Shay recognized DeLutis' voice as that of the telephone caller and placed DeLutis under arrest. Shay seized nearly $5,000 in cash from DeLutis' person. After DeLutis was given *Miranda* warnings, he stated that he had come to pay a gambling debt.

█ Appellant DeLutis was indicted in Count 1 of the indictment for conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846.[3] He was tried before a jury and convicted on the evidence set forth above.

DeLutis contends on appeal that the evidence is insufficient to show that he was a party to the conspiracy or that he even had any knowledge that a conspiracy existed. He says further that there was no evidence that he intended to agree to a conspiracy nor that he intended to commit the substantive offense charged. Of course, it is clear from circumstantial evidence that a conspiracy as charged in the indictment did in fact exist between the Eunises, Smith, Taglianetti and others. However, the sole question before us as far as DeLutis is concerned, is whether or not he was a party to it.

This court recently held in *United States v. Flaherty,* 668 F.2d 566, 580 (1st Cir.1981) that in a conspiracy case the government must prove beyond a reasonable doubt that the defendant had the specific intent to violate the substantive statute. The court held further that two types of intent must be proved: intent to agree and intent to commit the substantive offense. The agreement may be proved by circumstantial evidence.

In the instant case, there is no direct or circumstantial evidence of any express agreement by DeLutis showing an intent to agree to the conspiracy as charged, nor showing an intent to commit the substantive offense of distributing cocaine or of possessing with intent to distribute cocaine. Therefore, it appears that if the government is to establish either type of intent, it must do so by resorting to inferences from the evidence. The only evidence in the case from which the necessary inferences must be made was DeLutis' telephone conversations with agent Shay and his trip to Shirley's house with nearly $5,000 in cash on his person. This evidence shows an isolated or single act that is comparable to single sales or purchases of narcotics or other isolated single acts discussed below in connection with court decisions where such acts, without more, have been held to be insufficient to convict the accused as a coconspirator in a narcotics conspiracy case. In this regard, we have held that sufficient proof of specific intent or knowledge or acquiescence in a larger conspiratorial scheme ordinarily is not supplied by inference from one isolated act. *United States v. Hernandez,* 625 F.2d 2 (1st Cir.1980). In *United States v. Magnano,* 543 F.2d 431 (2nd Cir.1976), *cert. denied sub nom. DeLutro v. United States,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977) the court held that a single act is insufficient to link a defendant with an overall conspiracy when there is no independent evidence tending to show that the

---

**3.** Count 1 of the indictment was as follows:

From on or about October 1, 1981 and continuously thereafter up to on or about March 15, 1982, in the District of Rhode Island and elsewhere, DONALD J. TAGLIANETTI, also known as "Hog", ADOLF J. EUNIS, also known as "George", SHIRLEY MAE EUNIS, LAWRENCE J. MOOSEY, also known as "Tony", RAYMOND CARDULLO, MICHAEL JAMES DELUTIS, and DEBRA DEMASCO, did knowingly, intentionally and wilfully combine, conspire, confederate, and agree with each other and with diverse other persons known and unknown to commit offenses against the United States, that is, to knowingly and intentionally distribute and possess with intent to distribute cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1);

All in violation of Title 21, United States Code, Section 846.

906

defendant had some knowledge of the broader conspiracy, and when the single transaction is not in itself one from which such knowledge might be inferred. In the instant case, there is no independent evidence that DeLutis had any knowledge of the conspiracy of the other defendants to distribute cocaine or to possess with intent to distribute cocaine. Furthermore, there was no single act of DeLutis from which such knowledge might be inferred.

If it can be inferred from the evidence that DeLutis went to Shirley Eunis' house for the purpose of buying cocaine from her, the fact remains that he did not purchase any of the narcotic nor even offer to do so. But even if he had bought some cocaine on that occasion, his single purchase, without more, would not be sufficient to infer that he had knowledge of the conspiracy nor an intent to participate in it. We held in *United States v. Izzi,* 613 F.2d 1205 (1st Cir. 1980) that a single sale of drugs without more does not establish a conspiracy. In that case, Judge Bownes in speaking for the court said:

A single sale of drugs without more does not establish a conspiracy. *United States v. Mancillas,* 580 F.2d 1301, 1307 (7th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978); *United States v. Varelli,* 407 F.2d 735, 748 (7th Cir. 1969), *cert. denied sub nom. Saletko v. United States,* 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1972). There must be an agreement by the parties, not merely a getting together to conummate the transaction. "It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946). 613 F.2d at 1210

A similar decision was handed down by the court in *United States v. Koch,* 113 F.2d 982 (2nd Cir.1940). In that case the appellant had not only made a single purchase of cocaine, but had also sold some of it. The court held that this was not enough to prove a conspiracy. The court said:

The purchase of the cocaine from Mauro was not enough to prove a conspiracy in which Mauro and the appellant participated. They had no agreement to advance any joint interest. The appellant bought at a stated price and was under no obligation to Mauro except to pay him that price. The purchase alone was insufficient to prove the appellant a conspirator with Mauro and those who were his co-conspirators. *Dickerson v. United States,* 8 Cir., 18 F.2d 887. It was necessary to the government's case to show that the appellant was in some way knowingly associated in the unlawful common enterprise to import the drugs and dispose of them unlawfully. *United States v. Peoni,* 2 Cir., 100 F.2d 401; *Muyres v. United States,* 9 Cir., 89 F.2d 784. 113 F.2d at 983

In *United States v. Varelli,* 407 F.2d 735 (7th Cir.1969) the court held that in the absence of a prior understanding, a purchase does not prove a conspiracy even if both parties know the goods are illegal. The buyer's purpose is to buy and the seller's purpose is to sell. There is no joint objective. Similarly, the Second Circuit Court of Appeals held in *United States v. Borelli,* 336 F.2d 376 (2nd Cir.1964), speaking through Judge Friendly, that the gist of the offense of conspiracy is the agreement between the parties and it is necessary to determine what kind of agreement existed between them. This may be proved by inferences from acts, but a sale or a purchase scarcely constitutes a sufficient basis for inferring an agreement to cooperate, unless there is other evidence of an agreement that accompanies or supplements the sale.

In *United States v. Aviles,* 274 F.2d 179 (2nd Cir.1960) the court held that a single purchase alone was not enough to prove that a defendant was a participant in a conspiracy, and that it was necessary for the government to prove that the defendant knew of the conspiracy and associated himself with it. The court indicated that if the defendant had knowledge of the conspiracy and had a transaction with one of its members, it would be reasonable to infer

intent on the part of the defendant to participate in it. However, proof of knowledge of the conspiracy on the part of DeLutis is lacking in the instant case.

The Supreme Court made it clear in *Direct Sales Co. v. United States,* 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943) that charges of conspiracy cannot be made out by piling inference upon inference. The court said:

> Without the knowledge, the intent cannot exist. *United States v. Falcone,* 311 U.S. 205, 85 L.Ed. 128, 61 S.Ct. 204, supra. Furthermore, to establish the intent the evidence of knowledge must be clear, not equivocal. Ibid. This, because *charges of conspiracy are not to be made out by piling inference upon inference,* thus fashioning what, in that case, was called a dragnet to draw in all substantive crimes. 319 U.S. at 711, 63 S.Ct. at 1269, 87 L.Ed. at 1681 (Emphasis supplied)

Also see *United States v. Aguiar,* 610 F.2d 1296 (5th Cir.) where the court held that the requisite fact of intentional agreement or participation in a conspiracy cannot be established by piling inference on inference, citing *Ingram v. United States,* 360 U.S. 672, 680, 79 S.Ct. 1314, 1320, 3 L.Ed.2d 1503 (1959), and *Direct Sales Co. v. United States, supra.* In that case, the court also held that such fact cannot be made out by "suspicion and inuendo," citing *United States v. Palacios,* 556 F.2d 1359, 1365 (5th Cir.1977).

In order to sustain DeLutis' conviction, the government would have us pile inference on top of inference to prove that he was a co-conspirator. Such proposed material inferences include the following: that Shirley intended to sell to DeLutis a *large quantity* of cocaine (there is nothing indicating Shirley's intentions); that DeLutis intended to buy a *large quantity* of cocaine from Shirley (it can only be inferred that he intended to buy an undetermined amount of cocaine); that he was not buying the cocaine for his own use (there is nothing to support this. The evidence suggests that if he spent the entire sum for cocaine for his own use, it might only buy enough to last him 50 days); that he intended to sell the cocaine that he intended to purchase (there

is nothing to support or even suggest this); that his conversations with Shay evidenced DeLutis' knowledge of a broader conspiracy that included Shirley's source, Shirley, her other customers and DeLutis (there was nothing in the phone conversations that supports any of this); that the large amount of cash carried by DeLutis supports an inference that he was a part of a criminal venture that extended in both directions beyond his individual participation (this is pure speculation); and that DeLutis was not a mere purchaser, but was one link in the middle of a distribution chain (more speculation).

The piling of these unfounded and unsupported inferences on top of each other by the government is clearly contrary to the court decisions in *Direct Sales Co. v. United States, supra; Ingram v. United States, supra;* and *United States v. Aguiar, supra.* These inferences can only be based on suspicion, surmise and speculation, which is impermissible.

■ It should be pointed out that although Smith was intimately associated with the Eunises and their co-conspirators for many months in their purchase and distribution of cocaine, first as a co-conspirator himself and later as a government informer whose business it was to find out who was involved in the conspiracy, etc., he did not know DeLutis, had never met or seen him and had never heard his name mentioned until the day DeLutis was arrested at Shirley's house. We consider this as exculpatory evidence of considerable probative force that indicates that DeLutis was not a part of the conspiracy. While it is true that in some cases each conspirator may not be acquainted with all of the conspirators in a conspiracy, in most cases they know who is involved. This is especially true in this case where it is obvious that Smith was made an informant with surveillance and tape recordings by the officers to find out who was involved in the cocaine traffic, their sources and customers. DeLutis was totally unknown to him.

We hold that the evidence, evaluated in the light most favorable to the government,

was not sufficient to permit the jury to decide that each element of the offense was proven beyond a reasonable doubt. *United States v. Mora,* 598 F.2d 682 (1st Cir.1979). Accordingly, the conviction of appellant Michael DeLutis is reversed.[4]

■ Appellant Shirley Eunis filed a motion to suppress evidence seized at her home by the officers while executing a search warrant, alleging that they entered her home without knocking on the door or identifying themselves as officers and without announcing their purpose, all in violation of 18 U.S.C. § 3109.[5] She called her friend Denise Marsalla, who had met her at the airport when she returned from Florida with Smith and accompanied her to her home, as a defense witness who testified at the hearing on the motion that she was sitting near the door when the officers arrived and that she did not hear a knock on the door, nor a doorbell ring, nor any announcement by the officers prior to the time they broke the door open and entered the house. This evidence was sharply contradicted by FBI Special Agent Frederick Ghio, who testified that he knocked on the door, identified himself as an FBI agent, and announced that he had a search warrant, and asked to be admitted into the house. He waited about 20 seconds without any response from the occupants of the house, whereupon he broke the door open and entered the house with other officers. Upon entry, they found the cocaine that Smith had delivered to Shirley on the kitchen table with bundles of money. The district judge chose to believe the testimony of Agent Ghio instead of that of Marsalla, and at the conclusion of the hearing found the facts as related by Ghio and concluded that he had complied with the requirements of Section 3109 and that he was justified in breaking the door open and in entering the kitchen after waiting 20 seconds for a re-

sponse from those inside. He found further that 20 seconds was sufficient time to wait for a response under the existing circumstances where the cocaine could have been quickly disposed of in the kitchen sink or stove. The motion to suppress, which was overruled by the court, was not joined in by George Eunis, although on appeal he complains, along with Shirley, of the action of the trial court. There is serious doubt under these circumstances whether George has standing to raise this issue on appeal. Furthermore, he was not residing in the house at the time of the entry by the officers, but was serving time in prison for an unrelated offense. The Supreme Court held in *Sabbath v. U.S.,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) that Section 3109 has two purposes, namely (1) to protect the individual's right of privacy in his house, and (2) to safeguard officers, who might be mistaken for unlawful intruders into a home. George, who was an absentee owner at the time, hardly comes within the purposes of the statute.

In any event, the admission of the fruits of the entry and search into evidence was harmless as to George, because he was not charged with any offense arising out of this final cocaine transaction, and his convictions do not rest on the evidence discovered in the house by the officers on the occasion in question.

■ The Eunises contend that even if the officers knocked on the door and identified themselves as officers and announced their purpose, they violated Section 3109 because they did not wait long enough (more than 20 seconds) before breaking the door open. The Government points out in its brief that Section 3109 allows an officer to break open any door to execute a search warrant "if, after notice of his authority and purpose, he

4. In view of our disposition of DeLutis' case, we find it unnecessary to consider his complaint that the court erred in denying his motion for severance.

5. 18 U.S.C. § 3109 provides as follows:
§ 3109. Breaking doors or windows for entry or exit

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
June 25, 1948, c. 645, 62 Stat. 820.

is refused admittance * * *." Generally, a wait of 20 seconds is deemed adequate before the officers may force entry. *See Jackson v. United States,* 354 F.2d 980, 982 (1st Cir.1965) (10 seconds); *United States v. Davis,* 617 F.2d 677, 695 (D.C.Cir.1979), *cert. denied,* 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980) (15–30 seconds); *United States v. Phelps,* 490 F.2d 644 (9th Cir.), *cert. denied,* 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974) (10–20 seconds); *United States v. Allende,* 486 F.2d 1351, 1353 (9th Cir.1973), *cert. denied,* 416 U.S. 958, 94 S.Ct. 1973, 40 L.Ed.2d 308 (1974) (10 seconds). As this Court observed in *Jackson,* "10 seconds of silence * * * could mean that the occupant had not even started and hence was not going to."

■ We find no error in the action of the district court in overruling the motion to suppress.

■ The Eunises contend that they should be awarded a new trial because of the fact that Juror Barry Levin did not reveal voluntarily that he had previously applied for a job with the FBI but had failed the examination. After the trial, he phoned Agent Ghio and asked his advice whether he should take the examination again. He did not ask for help from Agent Ghio. However, Ghio informed the court and defense counsel of the conversation with Levin. Whereupon defense counsel moved for a mistrial. The court conducted a hearing, during which Levin testified that his FBI application had nothing to do with his verdict in this case and that he was not biased on account of it. The motion for a new trial was denied by the district judge. He found that Levin was not biased and that he did not use his guilty verdict to curry favor with a prospective employer. This finding cannot be disturbed on appeal unless clearly erroneous. *See Carpintero v. United States,* 398 F.2d 488 (1st Cir.1968). The appellants argue that bias should be presumed. The Supreme Court held otherwise in *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). That case was similar to the instant case. There a juror applied for a job with the district attorney during a trial. The Supreme Court refused to infer bias from the application. The court said the defendant must prove actual bias at the hearing. This has long been the rule. *Remmer v. United States,* 347 U.S. 227, 230, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); and *Dennis v. United States,* 339 U.S. 162, 167, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950). The appellants failed to discharge this burden in the case before us. The denial of the motion for a new trial by the district court was proper.

■ Appellants also contend that Agent Shay violated their Fourth Amendment rights by twice answering their telephone while in their house executing a search warrant. One of the calls was from co-defendant Lawrence Moosey, who was granted a severance and is not involved in this appeal. The other was from appellant DeLutis. The appellants did not move to suppress these calls prior to the trial as required by Rule 12(b)(3) of the Federal Rules of Criminal Procedure. Neither did appellants object to Agent Shay's testimony about the phone calls. Since appellants did not raise the issue in the trial court, they cannot successfully litigate it on appeal.

■ Furthermore, appellants have not cited us to any law or decided case that bars a police officer who is lawfully on the premises executing a search warrant from answering a telephone. The cases point the other way. *See United States v. Vadino,* 680 F.2d 1329, 1335 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983); *United States v. Gallo,* 659 F.2d 110, 113–115 (9th Cir.1981); *United States v. Campagnuolo,* 592 F.2d 852, 861–863 (5th Cir.1979); *United States v. Fuller,* 441 F.2d 755, 760 (4th Cir.), *cert. denied,* 404 U.S. 830, 92 S.Ct. 73, 30 L.Ed.2d 59 (1971).

In any event, the convictions of the Eunises did not depend on the two phone calls in question as the evidence against each of them was overwhelming without the calls. Consequently, if there was any error, it was harmless.

■ Finally, appellant George Eunis argues that he should be given a new trial because the district attorney in his rebuttal

argument to the jury referred to the finding of cocaine in the house of George and his wife by the officers at a time when George was in prison. The strategy of defense counsel at the trial was to discredit informant Smith who was a part of the drug conspiracy until he turned informant for the FBI. He was the only witness against George as to George's trip to Florida to purchase cocaine, and, except for the officers, he was the only witness against Shirley and the other co-defendants. Defense counsel sought to not only discredit him, but also to show that his testimony had not been corroborated. While arguing lack of corroboration to the jury, he told the jury that no cocaine had been found on the person of George or in his car. In rebuttal, in an effort to rehabilitate Smith and to show his credibility and to demonstrate corroboration of his testimony, the prosecutor reminded the jury that cocaine had been found in the house of George and Shirley Eunis where Smith told the officers it would be found. The district judge ruled that this was not evidence but was legitimate rebuttal argument in answer to defense counsel's statement to the jury. The court so instructed the jury. It is unlikely that the jury was misled by the prosecutor's argument. The parties had stipulated that George was outside of the State of Rhode Island at the time the officers seized the cocaine at his house. Also, George was not charged with possession of cocaine at that time, and therefore the jury did not have to decide that question. Furthermore, it should be pointed out that Smith's testimony was corroborated not only by the seizure of the cocaine, but by other evidence as well. For instance, there was a recording of a February 4, 1982, telephone call between George and Smith in which the sale of cocaine was arranged, and the cocaine delivered to Smith in response to the call was introduced into evidence. Also, George's trip to Florida on February 14, 1982, to purchase cocaine was proved by Smith's testimony and by the surveilling officers. Airline ticket records corroborated Smith's testimony regarding the trip by him and George to Florida on December 21, 1981. Thus, it appears that the evidence

against George was overwhelming, and if there was any error in the prosecutor's argument to the jury, it was harmless, and could not have affected the verdict. George is not entitled to a new trial because of the rebuttal argument of the prosecutor.

Accordingly, the conspiracy conviction of Michael DeLutis is reversed, and the convictions of George Eunis and wife Shirley Eunis are affirmed.

*Affirmed in part and Reversed in part.*