Susan LAVOIE, et al.

v.

The TOWN OF HUDSON, et al.

No. C–89–441–L.

United States District Court,
D. New Hampshire.

June 29, 1990.

89

Shaheen, Cappiello, Stein & Gordon by Andru H. Volinsky, Concord, N.H., Cathy J. Green, Manchester, N.H., for plaintiffs.

Cleveland, Waters and Bass, P.A. by Wayne C. Beyer, Thomas F. Kehr, Rath, Young, Pignatelli & Oyer, P.A. by Paul Barbadoro, Concord, N.H., Law Offices of Emile R. Bussiere by Emile R. Bussiere, Manchester, N.H., for defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

LOUGHLIN, Senior District Judge.

Defendants have filed a Motion to Dismiss (Doc. # 23) which subsequently was supplemented, after the plaintiffs amended their complaint, by the defendants' Supplemental Motion to Dismiss (Doc. # 41).

This civil rights action is brought under 42 U.S.C. § 1983. The court has jurisdiction over the matter pursuant to 28 U.S.C. § 1343 in addition to its pendant jurisdiction. The parties include Mrs. Susan Lavoie who has sued on her own behalf, on behalf of Bruce Lavoie's (her late husband) Estate and on behalf of her three minor children (Robert Lavoie, Jonathan Lavoie and Steven Lavoie). The defendants include the Town of Hudson, Hudson Chief of Police Albert Brackett and Officers Stephen Burke, Ronald Mello and Barry Golner, all being police officers on the Hudson Police Department at the time in issue. The action has been brought against the named officer defendants, including Chief Brackett, in both their official and individual capacities.

The defendants have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the federal claims in this suit. The defendants argue that this case should be dismissed essentially for the following reasons: 1) the complaint fails to state a claim upon which relief may be granted; and 2) the suit should be precluded based upon the officer defendants' qualified immunity.

Before evaluating the conduct and actions of these defendants to determine whether they violated plaintiffs' constitutional rights, a succinct summary of the events is set forth.

This case involves tragic events inchoate on August 2, 1989, which eventually culminated in the death of Bruce Lavoie during the early morning hours of August 3, 1989. The plaintiffs allege that a search warrant was issued by Nashua District Court Judge Roger Gauthier on August 2, 1989, for Apartment # 2 located on 24 Roosevelt Avenue, Hudson, New Hampshire, the Lavoie apartment, only after its supporting affidavit submitted by Officer Golner allegedly contained intentional and reckless material misrepresentations. Allegedly there was a meeting on August 2, 1989 between Chief Brackett and Officer Golner to develop a plan for executing the search warrant. It is unclear whether this meeting between Brackett and Golner was before or after the search warrant had been issued. Another meeting between Officers Burke, Mello and others (names still unknown to plaintiffs) was held on August 3, 1989 around 4:30 a.m. to inform the two officers of the plan the others had devised in executing the search warrant on the Lavoie apartment.

After obtaining a search warrant three Hudson police officers (Brackett, Burke and Mello) entered the Lavoie apartment around 5:00 a.m. August 3, 1989. Battering down the apartment door, the police officers entered the apartment without knocking or announcing their identity. Upon entry into the apartment the officers had their weapons drawn. Officer Burke had a flashlight taped to his left forearm while Officer Mello had a flashlight taped to his gun. The Amended Complaint does not state whether Chief Brackett had any flashlight, but it does mention that the Chief had with him the battering ram device used to knock the door down. Plaintiffs claim they were unarmed when the officers entered their apartment. Plaintiffs further allege that the officers knew prior to their entry that the apartment was dark and the Lavoie family was sleeping.

Officer Burke was the first to enter the apartment, at which time his firearm accidentally discharged, the bullet supposedly passing through a wall of the apartment finally coming to rest lodged in a vacuum cleaner in the same room where Steven Lavoie was sleeping. Plaintiffs assert that after Officer Burke fired the first shot, he did not state that he was a police officer, that the first shot had been fired accidentally or that he and the other officers had entered their home pursuant to a search warrant.

Plaintiffs maintain that the police officers were aware that the Lavoie family had previously been threatened by a neighbor and therefore would be apprehensive of any unfamiliar sounds in the apartment. The noise of the apartment door being jolted open and the sound of gun fire, plaintiffs claim, awoke Bruce Lavoie who attempted to ascertain what was happening and attempted to protect his family. Subsequent to Bruce Lavoie arising from his bed, Officer Burke fired another shot that fatally struck Bruce Lavoie. At the time Bruce Lavoie was shot, he was in his bedroom and was unarmed. Present in the room at the time the shot was fired was Jonathan Lavoie, who was in the same bed as his father and Steven Lavoie, who was also in the room on the floor when the shot was fired. Robert Lavoie, another son, was in the adjoining bedroom, while Susan Lavoie was in the living room when her husband was shot.

Officer Burke brought the three Lavoie children into the living room where Susan Lavoie was following the shooting of Bruce Lavoie. Susan Lavoie maintains that she attempted to go into the bedroom to attend and comfort her husband after he had been shot, but the officers repeatedly refused her pleas to do so, forcing her to remain in the living room. Susan Lavoie claims that Chief Brackett told her that her husband had only been shot in the arm and that he would be alright and that she could see him shortly at the hospital. Meanwhile Susan Lavoie was not allowed to go into another room to change out of her nightgown instead she was forced to change right in the living room with her sons holding a sheet to cover her while she changed.

Plaintiffs maintain that Chief Brackett instructed the officer calling for the ambulance not to describe the nature of Bruce Lavoie's injury. As a result the Hudson Fire Department dispatched appeared at the Lavoie apartment unprepared and not equipped to handle such a medical condition. Susan Lavoie was not allowed to travel with her husband in the ambulance to the hospital, nor was she informed of which hospital her husband was being taken to.

Bruce Lavoie died approximately one and a half hours after being shot in his apartment by Officer Burke.

The following month, September 1989, plaintiffs commenced this civil rights action, pursuant to 42 U.S.C. § 1983, claiming defendants deprived them of their constitutional rights to due process, and their right to be free and safe from unconstitutional searches and seizures. Plaintiffs' suit also contains several pendant state law claims, such as the wrongful death of Bruce Lavoie, intentional infliction of emotional distress, negligent infliction of emotional distress, assault and loss of consortium.

A motion to dismiss is one of limited inquiry. The standard for granting a motion to dismiss is not whether plaintiffs will ultimately prevail or are likely to prevail, but is whether the plaintiffs are entitled to offer evidence to support their claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Concord Labs, Inc. v. Ballard Medical Products*, 701 F.Supp. 272, 274 (D.N.H. 1988). The rule for reviewing the sufficiency of any complaint is that the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. at 1686, (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted)). Furthermore, "[f]or the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted," *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969), *reh'g denied* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969), and all reasonable inferences derived from those facts properly pled are to be construed in a light most favorable to the plaintiffs. *Weld Power Indus. v. C.S.I. Technologies*, 124 N.H. 121, 123, 467 A.2d 568 (1983).

The Town of Hudson, New Hampshire, has moved to dismiss the federal claims against it because they contend the

plaintiffs fail to establish any municipal liability on the part of the Town. A municipality, such as the Town of Hudson, may be liable under 42 U.S.C. § 1983 when their municipal policy or custom, by or through its employees, is the cause of depriving plaintiffs of their constitutional rights. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Ultimately the inquiry of municipal liability turns on the question of whether there is a direct causal link between a municipal policy or custom and plaintiffs' alleged constitutional deprivation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, ——, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). It is well settled law that the Town cannot be held liable under § 1983 on a *respondeat superior* theory, nor can it be held liable merely for employing a tortfeasor. *Monell v. New York City Dept. of Social Services*, 436 U.S. at 691, 98 S.Ct. at 2036. To maintain their § 1983 action against the Town of Hudson based upon an unconstitutional municipal policy or custom, plaintiffs must satisfy two requirements as defined by the First Circuit. "First, the custom or practice must be attributable to the municipality. In other words, it must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice. Second, the custom must have been the cause of and the moving force behind the deprivation of constitutional rights." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989).

The allegations alleged in plaintiffs' complaint, when considered in a light most favorable to plaintiffs, satisfy both requirements as set forth by the First Circuit and may establish municipal liability on the part of the Town. The Town of Hudson will not be dismissed, at this time, from the federal claims. The court's conclusion is based upon the following. Granted that the Town of Hudson may only be held liable under § 1983 for those acts the municipality has officially sanctioned or ordered, and municipal officials who have "final policymaking authority" are the only ones that may expose the Town to liability for their actions, the question then focuses on who has "final policymaking authority". That is a question of state law. *St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988); *Connell v. Town of Hudson*, 733 F.Supp. 465, 472 (D.N.H.1990). According to New Hampshire law, N.H. R.S.A. 105:2–a, police chiefs have the authority to direct and control all employees of his [or her] department in their normal course of duty. The First Circuit has found police chiefs to be policymakers in regards to law enforcement decisions, and has determined that chiefs are the ones "whose acts or edicts may fairly be said to represent official policy" as described in the *Monell* case. *Bordanaro v. McLeod*, 871 F.2d at 1157. It is reasonable then to conclude that Chief Brackett's conduct and direction before and during the actual entry into the apartment, and while in the Lavoie home, could easily be perceived as Town policy or practice, which may expose the Town to § 1983 liability. Further support for policy or custom of the Town may be inferred from the event itself as the First Circuit referenced in the *Bordanaro* case. This case involves four officers of the Hudson Police Department, including the Chief of that Department. A reasonable inference to be drawn from the Lavoie incident is that all Hudson Police Officers involved in the case, were operating under a shared set of rules and customs. The fact that all of these officers acted in concert is further evidence that there was a pre-existing practice of nighttime raids, battering down doors without first knocking and announcing their identity for the purpose of entering a private home in the middle of the night, absent exigent circumstances. The law requires more than proof of a single incident to impose liability on a municipality for unconstitutional activity, *unless* proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–824, 105 S.Ct. 2427, 2436–2437, 85 L.Ed.2d 791 (1985). An exception to the general rule that one needs to allege more than a single event to establish municipal custom may exist "where other evidence of the policy has been presented and

the 'single incident' in question involves the concerted action of a large contingent of individual municipal employees, the event itself provides some proof of the existence of the underlying policy or custom." *Bordanaro v. McLeod*, 871 F.2d at 1157. In viewing the matter in a light most favorable to plaintiffs, the court finds plaintiffs have alleged sufficient facts to avoid dismissal of their federal claims against the Town of Hudson, therefore defendants' Motion to Dismiss with regards to the Town is hereby denied.

For plaintiffs to prevail under a § 1983 action, they must allege that the individual defendants acted "under color of state law" and that defendants' conduct deprived plaintiffs of their "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see also Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Clearly, the prerequisite that the defendants have acted under color of state law is met because each of the named officers, including the Chief, acted within the course of their duties as Hudson Police Officers when they entered the Lavoie apartment. Following the determination that the officers, and the Chief, did act under color of state law, the court must address the issue of whether the plaintiffs suffered any deprivation of their constitutional rights by the defendants.

The amended complaint alleges that all of the plaintiffs, were subjected to an unreasonable search of their home during the early hours of August 3, 1989, in violation of their Fourth Amendment rights as guaranteed them through the Fourteenth Amendment. Specifically plaintiffs assert that the search of their home was unreasonable and unconstitutional because Chief Brackett, Officer Burke and Officer Mello entered their apartment while it was dark, at approximately 5:00 a.m. without first knocking or announcing that they were members of the Hudson Police Department. Their identity was never given to the Lavoies when the officers entered their apartment. The apartment was dark and it is fair to assume that at this hour the Lavoies most likely were asleep. Plaintiffs further assert that defendants were aware that minor children were in the apartment at the time of entry and that plaintiffs were fearful of a nearby neighbor who had threatened them causing the Lavoies to fear any strange noises.

Under Fed.R.Crim.P. 41(c)(1), the following is found: "The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." Section (h) states: "The term 'daytime' is used in this rule to mean the hours from 6:00 a.m. to 10:00 p.m. according to local time."

Reference is made to *United States v. DeLutis*, 722 F.2d 902, 909 (1st Cir.1983). Generally, a wait of twenty seconds is deemed adequate before the officers may force entry. This is in reference to the breaking down of the door.

The Fourth Amendment affords persons the right "to be secure in their persons, houses, ... and effects" from unreasonable searches and seizures. Although the language of the Fourth Amendment may be general, it nonetheless forbids any search that is unreasonable. *Ker v. California*, 374 U.S. 23, 33, 83 S.Ct. 1623, 1629, 10 L.Ed.2d 726 (1963). What constitutes a reasonable search is not cast in stone. It is to be determined on a case by case basis, with the facts and circumstances of each case to be the deciding factors for the standard of reasonableness. *Ker v. California*, 374 U.S. at 33, 83 S.Ct. at 1629. The reasonableness of the Lavoie search is a substantive determination to be made by a jury or trial court, *Ker v. California*, 374 U.S. at 33, 83 S.Ct. at 1629.

Defendants have moved for dismissal because the Constitution does not recognize a per se violation of the Fourth Amendment. However, plaintiffs have not alleged a per se violation, but instead argue that defendants' conduct and manner in entering the Lavoie apartment and executing the search warrant was unreasonable according to Fourth Amendment standards.

Bearing in mind the Supreme Court has long held that the Fourth Amendment should be liberally construed, *Go–Bart Co. v. United States*, 282 U.S. 344, 357, 51

S.Ct. 153, 158, 75 L.Ed. 374 (1931) (citing *Boyd v. United States*, 116 U.S. 616, 623, 6 S.Ct. 524, 528, 29 L.Ed. 746 (1886), *Weeks v. United States*, 232 U.S. 383, 389–392, 34 S.Ct. 341, 343–344, 58 L.Ed. 652 (1914)), the court is so inclined to pass on the issue of reasonableness at this juncture. There have been sufficient facts pled by the plaintiffs to question whether the defendants search was unreasonable under the Fourth Amendment. Therefore the court must deny defendants' Motion to Dismiss on this ground.

██ Defendants have moved to dismiss Officer Golner from this action, stating that his involvement with the Lavoie incident was limited to supplying an affidavit in support of the search warrant. The amended complaint includes detailed paragraphs alleging Officer Golner's affidavit intentionally or recklessly contained material misrepresentations. Whether defendant's affidavit included false statements of fact or omissions of fact is not the real issue here. The question is whether plaintiffs have sufficiently challenged the warrant affidavit to survive a motion to dismiss. It would be careless for this court to refuse to examine the adequacy of plaintiffs' proffer of material misrepresentations allegedly made by Officer Golner in his affidavit. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Defendants' Motion to Dismiss must fail here too.

██ Susan Lavoie claims she was forcibly confined to her living room in violation of her Fourth Amendment right to be free from unreasonable seizures, after her husband had been fatally shot by Officer Burke. There is no question that the Fourth Amendment allows police officers armed with a search warrant based on probable cause to detain the occupants of the premises while they conduct a proper search. *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). However, in the case of Susan Lavoie, it was not a question of detaining her while her home was being searched. A search of the Lavoie apartment was not conducted until hours after the initial entry. No search was under way while she was confined to the living room. A balance must be struck between the extent of the intrusion on Susan Lavoie's right to be free from unreasonable seizures against the Hudson Police Department's interests in effective law enforcement. *See Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Plaintiff has alleged ample facts that call into question whether such a seizure of her person was reasonable under these facts and circumstances pursuant to Fourth Amendment safeguards. Defendants' Motion to Dismiss must be denied on this basis.

██ Next is the allegation that excessive force was used depriving Bruce Lavoie of his right to due process and the right to be secure in his life and person. The law requires more than mere negligent conduct causing unintended loss of life before the Due Process Clause will be extended in a § 1983 action. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Plaintiffs maintain that the use of force was used before an alternative to voluntary compliance was offered. Whether the amount of force used against Bruce Lavoie was reasonable "requires careful attention to the facts and circumstances of [this] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, — U.S. ——, 109 S.Ct. 1865, 1872–1873, 104 L.Ed.2d 443 (1989). Once again the court must weigh whether the force used by Officer Burke was reasonable under the facts and circumstances in this case. In viewing the amended complaint in a light most favorable to plaintiffs, the court finds that plaintiffs may have a viable claim here, sufficient at least to survive a motion to dismiss.

██ In addition to the allegation of excessive force, plaintiffs further allege that Bruce Lavoie's right to due process of law was violated by defendants indifference to his medical needs. The Due Process Clause does require the Hudson Police Officers to provide medical care to persons injured while being apprehended by them. *Revere v. Massachusetts General Hospi-*

*tal,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). Whether the Hudson Police violated Bruce Lavoie's constitutional right to obtain medical care after being fatally shot by Officer Burke, will be determined by whether the officers used reasonable professional judgment when calling for and contacting the Hudson Fire Department ambulance team. *Cf. Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Plaintiffs claim that Chief Brackett instructed the officer making the call for the ambulance not to describe the nature of Bruce Lavoie's injury, resulting in fewer personnel and less equipment arriving then called for in attending to shooting victims. Upon arrival only certain paramedics were allowed to attend to Bruce Lavoie, per Chief Brackett's instructions. Susan Lavoie was not permitted to accompany her husband in the ambulance to the hospital, nor was she told which hospital her husband was being taken to. These allegations certainly call into question the reasonableness of the officers' judgment in attending to Bruce Lavoie's medical needs. As to defendants' indifference to plaintiff's medical care, defendants' Motion to Dismiss must fail.

 Lastly, defendants argue that even if plaintiffs constitutional rights were violated, the individually named defendants are entitled to qualified immunity because their conduct was objectively reasonable. The defendants' motion must fail on this ground also because they did not establish as a matter of law that a reasonable officer could have believed that their actions did not violate plaintiffs' constitutional rights. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Qualified immunity will protect the police officers performing discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. at 638, 107 S.Ct. at 3038. As to the question of whether the Hudson Police Officers, including the Chief, are protected by qualified immunity and may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, *Anderson v.*

*Creighton,* 483 U.S. at 639, 107 S.Ct. at 3038, and the reasonableness of their actions remains in dispute.

 Government officials, such as the Hudson Police, "are liable for damages only if they *should have known* that *what they did* violated the law." *Newman v. Commonwealth of Massachusetts,* 884 F.2d 19, 26 (1st Cir.1989). Further defendants' Motion to Dismiss should not be granted based on qualified immunity at this stage of the litigation because plaintiffs have sufficiently alleged that there remains an issue regarding whether defendants had reason to take the action they did in entering the Lavoie apartment and shooting Bruce Lavoie.

Wherefore, in light of the reasons set forth hereinabove, the court denies defendants' Motion to Dismiss (Doc. # 23) and further denies their Supplemental Motion to Dismiss (Doc. # 41).

SO ORDERED.