[NOT FOR PUBLICATION]
 United States Court of Appeals United States Court of Appeals
 For the First Circuit For the First Circuit
 

No. 95-2283

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 JUANA ORTEGA,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Francis J. Boyle, U.S. District Judge] 

 

 Before

 Stahl and Lynch, Circuit Judges, 
 and O'Toole,* District Judge. 
 

 Richard K. Corley for appellant. 
 Zechariah Chafee, Assistant United States Attorney, with 
whom Sheldon Whitehouse, United States Attorney, was on 
brief, for appellee.

 

 May 20, 1997
 

*Of the District of Massachusetts, sitting by designation.

 Per Curiam. Juana Ortega appeals both her Per Curiam.  

conviction for conspiracy to distribute cocaine base ("crack"

cocaine) and her sentence. She claims that her trial was

flawed in that the court gave an improper Allen charge and 

that there was insufficient evidence to support her

conviction. She also argues error in the trial court's

denial of her motion for a new trial. Finally, she disputes

the court's determination of her sentence. We affirm.

 I.

 Ortega was charged with distributing crack cocaine

in violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. 2, and

conspiracy to distribute crack cocaine in violation of 21

U.S.C. 841(a)(1), 846. Her arrest resulted from an

ongoing undercover operation conducted by the Drug

Enforcement Agency ("DEA").

 Between December 18 and 19, 1994, Hector San

Martin, a DEA informant, made arrangements to purchase crack

from Julio Valdez at a Providence, Rhode Island, Burger King.

Although Valdez himself had made a previous drug delivery to

San Martin several days earlier, Valdez told San Martin by

phone that this time the crack would be delivered in the

Burger King parking lot on December 19 by a boy, girl, or

woman. The Burger King was located about a quarter mile from

the apartment Valdez was using at 37 Labin Street in

Providence. 

 -2- 2

 On the day of the deal, Valdez told San Martin by

phone that a lady in white would deliver the drugs. The

"lady in white" turned out to be Ortega.

 That afternoon, DEA agents conducting surveillance

observed Valdez and Ortega emerge from the Labin Street

apartment and walk together to the Burger King. After Valdez

pointed to San Martin's car, Ortega got into the front seat.

Valdez remained nearby to keep a lookout. 

 According to San Martin's testimony, when Ortega

entered the car, he asked Ortega if she had "the stuff," and

she replied "yes." She then pulled out a clear plastic bag

containing cocaine base from her inside jacket pocket. After

San Martin explained that he wanted to check the quality,

Ortega answered "okay" and handed the bag to him. 

 Leaving the crack bag on the floor of the car, San

Martin told Ortega that the money was in the trunk and got

out. At the sight of the raised trunk door -- the signal for

arrest -- DEA agents moved in to arrest Valdez and Ortega.

After a few seconds, Ortega got out of the car and ran

screaming; she was caught and arrested by one of the agents.

Valdez, who had also tried to run, was caught and arrested as

well. 

 In her statement to police, Ortega complained of

severe neck pain due to a thyroid condition and said that she

had been at 37 Labin Street, her girlfriend's apartment, only

 -3- 3

to rest. She explained her walk to the Burger King as an

attempt to ease the pain. As for the drug delivery, she said

only that at some point she was asked to do a "favor" and

that because of her physical pain, she was not thinking

clearly.

 On the second day of jury deliberations at Ortega's

trial, the jury informed the court that it had reached a

verdict on all counts but was deadlocked on the conspiracy

count. The court then issued a supplemental charge

instructing the jury to go back and try to reach a verdict.

Thirty minutes later, the jury returned a guilty verdict on

the conspiracy charge.

 At sentencing, the court found that Ortega had a

base offense level of 32 based on the quantity of crack she

was delivering (84.3 grams) and a criminal history category

of I. The court then granted a two-level reduction pursuant

to U.S.S.G. 5C1.2 and a four-level reduction for Ortega's

minimal role in the offense. Thus, the offense level was

reduced from 32 to 26, and defendant was sentenced to 63

months in prison and 5 years of supervised release.

 II.

 Ortega's motion for acquittal based on an

insufficient evidence argument was denied by the district

court. Viewing the record in the light most favorable to the

government, a rational jury could have found guilt beyond a

 -4- 4

reasonable doubt. See United States v. Dockray, 943 F.2d 

152, 157 (1st Cir. 1991). We therefore affirm the district

court's denial of Ortega's Rule 29(c) motion. See Fed. R. 

Crim. P. 29(c).

 To prove conspiracy, the government must show that

the defendant had the intent to agree and that the defendant

had an intent to distribute cocaine -- the substantive

offense. See United States v. DeLutis, 722 F.2d 902, 905 

(1st Cir. 1983). Viewing the evidence and drawing inferences

therefrom, a rational jury member could certainly have found

guilt beyond a reasonable doubt. See United States v. 

Montas, 41 F.3d 775, 778 (1st Cir. 1994), cert. denied, 115 

S. Ct. 1986 (1995). Such evidence included Valdez's

statement to San Martin that a woman wearing white would

deliver the drugs, Ortega's walk with Valdez to the Burger

King, Ortega's entrance into a stranger's car, and her prompt

delivery of a bag containing crack previously hidden on her

body, when asked for "the stuff." 

 This case is unlike those Ortega cites for the

proposition that a single drug transaction is insufficient

evidence of conspiracy. See, e.g., Delutis, 722 F.2d at 906; 

United States v. Izzi, 613 F.2d 1205, 1210 (1st Cir. 1980). 

There is no such per se rule in any event; we look at all the

facts in the case. DeLutis merely held that the single sale 

there was insufficient to tie the defendant buyer to the

 -5- 5

sellers' drug distribution conspiracies. See DeLutis, 722 

F.2d at 905-06; see also United States v. Acevedo, 842 F.2d 

502, 505-06 (1st Cir. 1988) (rejecting the argument that

evidence of conspiracy between sellers must be insufficient

because it involved only a single sale). A single sale can

establish a common purpose on the part of the sellers --

here, Ortega and Valdez. See Acevedo, 842 F.2d at 506.  

Moreover, in DeLutis, there was no direct or circumstantial 

evidence that defendant intended to agree to become involved

in a larger supplier/distributor relationship, and there was

no basis to infer based on the single act in question. In

Izzi, there was no evidence of agreement linking the 

defendant to the broader conspiracy during the dates charged

in the indictment. Here, there were only two members of the

conspiracy, and it is not difficult to infer knowledge and

agreement. 

 Other cases Ortega cites for support are also

distinguishable. See, e.g., United States v. Ocampo, 964 

F.2d 80 (1st Cir. 1992); United States v. Mehtala, 578 F.2d 6 

(1st Cir. 1978). The evidence here shows that Ortega's level

of involvement was greater than mere knowledge of the

substantive crime and thus suffices to support the jury's

finding that there was an intent to agree and an intent to

distribute. See United States v. Brandon, 17 F.3d 409, 439- 

40 (1st Cir. 1994) (explaining that Ocampo and Mehtala held 

 -6- 6

only that defendant's mere presence at scene of crime or mere

association with criminals was insufficient to support

conspiracy conviction). 

 Ortega also challenges the supplemental charge the

judge gave to the jury when it announced that it was

deadlocked on the conspiracy count. The trial court

committed no error. In fact, the judge recited verbatim the

Allen-type charge recommended by this court in United States 

v. Angiulo, 485 F.2d 37, 40 n.3 (1st Cir. 1973). That the 

jury returned a verdict thirty minutes later is not, as

Ortega asserts, evidence of "coercion." 

 Ortega's appeal of the trial court's denial of her

motion for new trial fares no better. We review only for

abuse of discretion or misapplication of law. See United 

States v. Rodriguez, 738 F.2d 13, 17 (1st Cir. 1984). The 

district court need only order a new trial if a miscarriage

of justice would otherwise result. See United States v. 

Indelicato, 611 F.2d 376, 387 (1st Cir. 1979). Ortega 

presents no claim that even suggests a miscarriage of

justice. Moreover, she does not recount any prejudicial acts

that resulted in an unfair trial, see Payton v. Abbott Labs, 

780 F.2d 147, 152-53 (1st Cir. 1985), nor does she contend

that the verdict was seriously erroneous, see Borras v. Sea- 

Land Serv., Inc., 586 F.2d 881, 887 (1st Cir. 1978). It was 

well within the court's discretion to deny the motion. 

 -7- 7

 Lastly, Ortega challenges her sentence on two

equally unsuccessful grounds, arguing first that the judge

should have used the base offense level for powder cocaine

instead of crack cocaine and, second, that the court should

have allowed a downward departure for diminished capacity

under U.S.S.G. 5K2.13. There is absolutely no support for

Ortega's first claim: the court, pursuant to the Sentencing

Guidelines, calculated the base offense level based on the

drug involved in the crime. See U.S.S.G. 2D1.1(c). 

Evidence at trial showed that the drug was crack cocaine. 

 As for Ortega's second claim, we are without

jurisdiction to review a discretionary refusal to depart.

See United States v. Morrison, 46 F.3d 127, 130 (1st Cir. 

1995); see also United States v. Saldana, 109 F.3d 100, 102- 

03 (1st Cir. 1997). While the district court did not

explicitly address Ortega's request for departure for

diminished capacity, it is clear from the total circumstances

of the case as well as the court's remarks at sentencing

that, rather than believing it lacked authority to depart,

the court simply declined to do so. See Morrison, 46 F.3d at 

130. Ortega has advanced no colorable claim of legal error

that would lead us to exercise jurisdiction here.

 Affirmed. 

 -8- 8