**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard WATTS, Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lloyd Ray BUXTON,**
**Defendant–Appellant.**

**Nos. 87–1228, 87–1229.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1988.

Decided June 2, 1988.

Malcolm S. Segal, and Robert M. Wilson, Segal & Kirby, Sacramento, Cal., for defendant-appellant Lloyd Ray Buxton.

Christopher H. Wing, Sacramento, Cal., for defendant-appellant Richard Watts.

Dale E. Kitching, Sp. Asst. U.S. Atty., Criminal Div., for plaintiff-appellee.

Before KOELSCH, NOONAN, and O'SCANNLAIN, Circuit Judges.

NOONAN, Circuit Judge:

Richard Watts appeals his conviction of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Lloyd Ray Buxton appeals his conviction of conspiracy to distribute methamphetamine in violation of the same statute and § 846. The cases are related and are consolidated here on appeal. The principal issue in each is whether under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1979) a hearing should have been held as to the affidavits which secured much of the evidence that went to the convictions.

## FACTS

On June 9, 1986 a judge of the Municipal Court of Sacramento issued a search warrant for 6509 Briartree Way, Citrus Heights, California and for 101 Patton Court, Folsom, California, authorizing a search for methamphetamine and paraphernalia commonly associated with its packaging for sale. The search warrant was based on the affidavit of James Seminoff, an agent of the Bureau of Narcotic Enforcement of the State of California.

Seminoff in his affidavit indicated that he had worked for a year in this role, and that for 15 years previously he had worked for the California Highway Patrol; that he had attended schools relating to the sale of methamphetamine; and that he had arrested no less than 100 persons involved in possession or sale of drugs and had investigated no fewer than eight clandestine methamphetamine laboratories. He stated that on April 30, 1986 he met a confidential informant who told him that Linda Bell, a resident of 6509 Briartree Way, Citrus Heights, was dealing in methamphetamine and that her source was one "Ray" who resided at River Edge and Patton Court in Folsom.

Seminoff then arranged for the informant to purchase methamphetamine from Linda Bell on May 28, 1986. On May 29th Seminoff went with the informant to 6509 Briartree Way and there himself arranged to buy one-half ounce of methamphetamine from Bell. Seminoff gave her $500 but she said she would have to contact her source in order to provide the one-half ounce. Also present on this occasion was one John Eagles.

Bell, Eagles and a man named Kim then left Bell's residence and were observed by police surveillance arriving at 101 Patton Court, Folsom, the residence of Lloyd "Ray" Buxton. En route Bell dropped off Eagles and Kim, and she picked them up again before returning to her own place. As the affidavit made clear, surveillance was lost for an hour during the return trip. On returning, Bell told Seminoff that she had bought the methamphetamine from Ray, observing in passing, "I'm the only one who can go to his home after three years." Eagles weighed out the white powder substance. Bell repackaged it and Seminoff took delivery.

On June 3, 1986 Seminoff again visited Bell, who was with Eagles. She was paid $1,000. Surveillance followed her again to 101 Patton Court, Folsom. En route she again dropped off Eagles and picked him up on her return. Eagles delivered the methamphetamine to Seminoff. All these facts were presented to the judge who issued the warrant.

After obtaining the warrant Seminoff did not execute it immediately, but tried to buy more methamphetamine from Bell. She said she could not obtain any now from Ray. The warrant was executed on June 16. Methamphetamine was found on the premises at 101 Patton Court.

Also on the premises at 101 Patton Court was Richard Watts, who was arrested for possession of the drug. After Watts' arrest a search warrant was issued on June 18, 1986 by Esther Mix, United States Magistrate, for a search of the Rainbow Mine, Sawyers Bar, Siskiyou County, California, for methamphetamine and chemicals commonly associated with its manufacture, packaging or transport and for records of customers and other documents tending to establish a conspiracy in regard to the drug. The warrant was issued on the basis of an affidavit by Stuart E. Till, another special agent for the California Bureau of Narcotic Enforcement with substantial experience in drug enforcement.

According to Till, in January 1985 a special agent of the DEA, Richard P. Margarita, working under cover had been told by Kathy DeSilva that she and her partner, Ray Buxton, were in a business in which she got chemicals and made lots of money. The same month a confidential informant told Margarita that DeSilva was involved with Buxton in the distribution of methamphetamine and that DeSilva had told the informant that it was made in Sawyers Bar, California by Richard Watts. In February and March 1985 Till had observed the pick up of chemicals ordered by Buxton in Seattle and their transport to Sacramento; Buxton and Watts had met the driver on arrival in Sacramento. The driver, one James Hicks, said in prison in June 1985 that in 1984 Buxton had sold him methamphetamine. Hicks went on to say that in 1985 he had picked up chemical precursors for Buxton in Louisville, Kentucky, ultimately delivering them at Buxton's direction to the Coeur d'Alene area.

Till further stated that on June 16 during the execution of the search warrant at 101 Patton Court a woman called Sue telephoned and told the agent who answered to tell Dick Watts she was driving up to the Rainbow. Watts' wife's name was Sue. The Rainbow Mine was located in Sawyers Bar. Putting these facts together, Till further learned that during a drug investigation by the sheriff of Siskiyou County in December 1985, a confidential informant had said that one Tammy Bennett on November 19, 1985 saw a large drug deal take place at the Rainbow Mine and knew that there was a secret drug laboratory there. The Rainbow Mine was recorded as owned by Richard and Rita Watts.

Till added that the methamphetamine found at Buxton's appeared to have been recently manufactured and that on the basis of the information he had gathered about Buxton's purchases that Buxton had bought enough phenylactic acid to make at least 1,800 pounds of pure methamphetamine. At the wholesale price of $12,000 per pound, he would be able to sell this amount for $21 million. The warrant issued on these facts.

## ISSUES

1. Buxton challenges the warrant for 101 Patton Court on the ground that Seminoff did not disclose that Bell knew two other people named Ray besides himself. One was a man named Raymond George Foot who once resided at Briartree Way and dealt in narcotics and stolen property. The other was John Eagles whose middle name was Raymond and was sometimes known in drug circles as Ray.

2. Buxton further asserts that the warrant was defective because the surveillance of Buxton's residence which had been going on as far back as July 1985 had led to nothing which would support the belief that Buxton was Linda Bell's supplier.

3. Finally, Buxton contends that the agent had a duty to inform the magistrate after the issuance of the warrant that Bell now was telling him that her source had no methamphetamine. This negative statement of Bell, according to Buxton's argument, led to "the evaporation of probable cause."

4. Watts challenges the Patton Court search and additionally challenges the Rainbow Mine search. The bases for the latter challenge are several: that the unreliability and possible motive of Hicks were not noted in the affidavit; that no mention was made that aerial surveillance of the Rainbow Mine on November 19, 1985 had not indicated any vehicles connected with Buxton or Watts; that Tammy Bennett later denied the statements attributed to her.

## ANALYSIS

▮ Nothing material was omitted from Seminoff's affidavit. Only one Ray was connected by Seminoff's confidential informant with 101 Patton Court. There was no reason for Seminoff to tell the magistrate about another Ray who had lived with Linda Bell at another time. There was no reason for Seminoff to mention that John Eagles' middle name was Raymond, although that fact does appear at one point in the information supplied to the court issuing the warrant. Seminoff had never heard him referred to as Ray. Eagles, moreover, was present with Bell when she said to Seminoff she had to contact her source. As Eagles' participation in the deals was not being hidden from Seminoff there was no reason to think that in a roundabout way Bell was getting a supply from him when she dropped him off and went on to 101 Patton Court, Ray Buxton's residence. The whole argument about the three Rays of Linda Bell is an exercise in obfuscation.

▮ There was no need to state a negative finding of no activity at Buxton's when the surveillance of Linda Bell had paid off by pointing to positive activity. There was also no need to report the sudden drying up of Linda Bell's source after June 9. The fact that her supplier did not have the stuff on hand did not render stale the information that her supplier had provided the drug for the two controlled buys by Seminoff. In short, counsel for Buxton strain very hard to make anything like a presentable case. Their strained efforts fall far short of being persuasive.

▮ As to Watts, he has no standing to object to the first search warrant. As to the Rainbow Mine, he, like Buxton, seems to think that investigators have to report non-evidence along with evidence. Obviously in any investigation there will be probes that yield nothing. When strong probative evidence of criminal activity is uncovered, there is no point in reporting unproductive surveillance. Innocent activity does not disprove the observed evidence of criminal conduct.

The information from Hicks in Till's affidavit played a relatively small part. Knowing that Hicks was in jail, Magistrate Mix could make her own estimation of his motives and credibility. As for the retraction of Tammy Bennett, that came after the arrests and obviously has no bearing on the belief with which Till inserted a reference to her story in his affidavit. Till's affidavit, like Seminoff's, provided a substantial basis for the judicial officer issuing the search warrant to conclude that probable cause existed.

AFFIRMED.