**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bradford L. LOCKETT,**
**Defendant–Appellant.**

No. 90–30012.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 1, 1990.

Decided Nov. 23, 1990.

Phillip M. Margolin, Margolin & Margolin, Portland, Or., for defendant-appellant.

Errol Carlsen, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before KOZINSKI, O'SCANNLAIN and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

This appeal from convictions for drug-related crimes raises several significant issues, one of which involves standing to invoke a violation of the federal requirement for announcement before entry into a residence to serve a search warrant.

I

In June 1987, the Portland Police Bureau began investigating cocaine trafficking in the near north and northeast areas of the City of Portland, Oregon. Acting upon information supplied by a confidential informant, the police paid special heed to four individuals, Bradford Lockett, Herbert Lockett, Keith Horsley, and Marcella Manning. Portland police officers began to monitor the activities of Bradford Lockett ("Lockett") and Manning, observing Lockett's activities approximately ten to twenty hours per week from October 1987 until his arrest on February 6, 1988.

During this period, Portland police officers observed Lockett engage in numerous suspicious activities. On two occasions, they observed Lockett accompany Marcella Manning (who appeared to be Lockett's girlfriend) to the Portland airport. In both instances, the pair drove their car in a manner that suggested that they were attempting to elude followers. At the airport, they avoided being seen with each other. Each time, Manning boarded a flight to Los Angeles; her name, however, was not on the passenger lists for any of these flights, suggesting that she purchased her tickets under an alias.

During the evening of January 19, 1988, Portland police set up a surveillance of a residence located at 6237 North Montana Street. Manning and another individual were observed through a picture window packaging a controlled substance. Lockett was present in the same room during most of this time, although he was never personally observed participating in the packaging process.

Also in January, Lockett and a young woman named Marvina Allen entered the Union Avenue branch of United States Bank with a briefcase containing $50,000 in cash and sought to purchase a cashier's check. When Lockett was informed that a currency transaction report would have to be completed regarding the transaction, Lockett left the bank, returning later with Charles Allen. Lockett claimed that the money belonged to Charles Allen and Marvina Allen, even though Charles Allen was unemployed and Marvina Allen worked as a telephone operator.

On January 25, 1988, Lockett purchased a house for $75,000 from Jo–Ellen Hembree, a real estate broker. At the time of closing, Lockett initially offered $75,000 in cash. When told that this would require the completion of several IRS forms, Lockett left and returned with a number of cashier's checks, which he then used to purchase the house.

On February 6, 1988, the police again began monitoring Lockett's activities. Lockett and Marcella Manning were observed leaving an apartment located at 129 Northeast Thompson Street at approximately 3:05 p.m. The pair went to 6209 Northeast Seventh Avenue, where Manning delivered a blue and grey bag. They then proceeded to the 6237 North Montana Street residence. Both Lockett and Manning went into this location, where they remained for ten minutes. They then returned to the Thompson Street residence at approximately 4:00 p.m. As the evening progressed, the police observed numerous individuals go to the front door and then quickly leave.

At 7:13 p.m. that evening, numerous members of the Portland Police Bureau served a search warrant at the Thompson Street residence.[1] Officer Jacobelli knocked on the door and announced that he was a police officer and that he had a search warrant. After four to five seconds elapsed without a response, the officers pried open the door and entered. Inside, they encountered Lockett, Marcella Manning, and Carla Manning. They also discovered approximately 1,800 grams of cocaine, most of it found either in a bedroom, in a plastic bag resting on the television set, or lying on a large plate on the coffee table in the living room. Some of the cocaine was contained in 80 small baggies, resting on or alongside the coffee table. Also found in the living room was a cooking pot and seven cigarette lighters. The room resembled, according to Officer Brumfield, a cocaine-packaging assembly line. A leather jacket belonging to Lockett

was found in a closet. A paging device was discovered on Lockett.

A subsequent search of Lockett's residence, which he shared with his parents, revealed currency totaling $25,000.

Lockett was eventually convicted by a jury on four counts: conspiracy to possess cocaine with intent to distribute, conspiracy to distribute cocaine, distribution of 500 grams or more of cocaine, and possession of 500 grams or more of cocaine with intent to distribute. This timely appeal followed.

## II

Lockett argues that evidence obtained as a result of the search at 129 Northeast Thompson Street must be suppressed because the searching officers violated the "knock and announce" statute, 18 U.S.C. § 3109 (1988).

## A

■ A person whose personal interests have not been infringed by an unannounced police entry does not have standing to challenge the entry under section 3109. *See United States v. Valencia–Roldan*, 893 F.2d 1080, 1081 n. 1 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2181, 109 L.Ed.2d 509 (1990) (defendant lacked standing to challenge alleged violation of section 3109 because he was not present at the time of entry); *United States v. DeLutis*, 722 F.2d 902, 908 (1st Cir.1983) (expressing "serious doubt" as to whether an absentee owner had standing under section 3109). To have a sufficient personal interest for purposes of standing under section 3109, the person must be a member of the class of persons sought to be protected by the statute. *See DeLutis*, 722 F.2d at 908.

Accordingly, to determine whether Lockett has standing under section 3109, we first examine the purposes underlying section 3109. In *United States v. Bustamente–Gamez*, 488 F.2d 4 (9th Cir.1973), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974), we observed that

1. This was one of six warrants served that evening in connection with the cocaine distribution investigation.

"[t]hree interests are said to be served by the rule of announcement: (1) it reduces the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) it guards against the needless destruction of private property; and (3) it symbolizes the respect for individual privacy summarized in the adage that 'a man's house is his castle.'" *Id.* at 9; *see also United States v. Ruminer*, 786 F.2d 381, 383 (10th Cir.1986) (section 3109 "serves several purposes: (i) it decreases the potential for violence; (ii) it protects the privacy of the individual by minimizing the chance of forcible entry into the dwelling of the wrong person; and (iii) it prevents the physical destruction of the property by giving the occupant time to voluntarily admit the officers"); *United States v. Ford*, 553 F.2d 146, 165 n. 58 (D.C.Cir.1977). Lockett claims that he has standing under what may be described as both the privacy and safety interests served by section 3109.

### B

We turn first to Lockett's claim that he had an expectation of privacy in the Thompson Street residence. Lockett concedes that he did not reside at or hold a proprietary interest in the residence. However, Lockett maintains that he had an expectation of privacy nonetheless, citing our rule that a "formalized arrangement among defendants indicating joint control and supervision of the place [searched] is sufficient to support a legitimate expectation of privacy." *United States v. Johns*, 851 F.2d 1131, 1136 (9th Cir.1988) (quoting *United States v. Broadhurst*, 805 F.2d 849, 852 (9th Cir.1986)).

■ The defendant bears the burden of proving that he has a legitimate expectation of privacy. *See Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). Lockett contends that under *Johns* and *Broadhurst*, his membership in a joint criminal venture was sufficient to give him a legitimate expectation of privacy in the property used by the joint venture. Lockett, however, misreads our cases. Mere presence at the

location of a narcotics search is insufficient to establish privacy standing. *See United States v. Watts*, 848 F.2d 134, 137 (9th Cir.), *cert. denied*, 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 332 (1988). Moreover, mere membership in a criminal venture does not give a person an expectation of privacy in all property used by the venture. Rather, the defendant must show some "joint control and supervision of the place searched." *United States v. Pollock*, 726 F.2d 1456, 1465 (9th Cir.1984); *see also Johns*, 851 F.2d at 1136. Lockett has offered no evidence that he possessed any control or supervision over the Thompson Street residence. Thus, Lockett did not sustain his burden of showing a legitimate expectation of privacy.

### C

■ Lockett also contends that he has standing within the scope of section 3109's safety rationale as set forth in *Bustamente–Gamez* and *Ruminer* merely because he was present at the Thompson Street residence at the time of the search. The safety rationale has been explained as follows:

> Surreptitious entry of private premises ... is also fraught with physical—even mortal—danger for both the occupants of the private premises and the police. The occupants, on discovering the unidentified intruders, may attempt to shoot them, and the police will doubtless return the fire. This danger was one of the reasons for enactment of 18 U.S.C. § 3109 requiring knocking and notice to occupants before entry to execute a search warrant.

*Ford*, 553 F.2d at 165 n. 58; *see also Bustamente–Gamez*, 488 F.2d at 9 (§ 3109 "reduces the potential for violence to both the police officers and the occupants of the house into which entry is sought"). Arguably, any person present at the time of an alleged knock-notice violation may have standing under section 3109. Because Lockett was present at the Thompson street residence at the time of the alleged section 3109 violation, he conceivably might have standing to assert his safety interest

regardless of whether he had a privacy interest.

Nevertheless, even if we assume that section 3109 was violated, the mere possession of standing under that section's safety rationale is no guarantee that the relief Lockett seeks is available to him. Violation of section 3109 frequently results in the suppression of the evidence garnered after the illegal police entry. *See United States v. Dicesare*, 765 F.2d 890, 895 (9th Cir.), *amended on other grounds*, 777 F.2d 543 (1985). Suppression, however, may not always be the appropriate remedy for a section 3109 violation, as suppression is a remedy ordinarily reserved only for breach of one's constitutional rights.

A primary object of the fourth amendment is to provide a constitutional safeguard for a person's privacy. *See INS v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984).[2] The primary remedy for government violation of the fourth amendment is the suppression of the illegally-obtained evidence. *See Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984). Although suppression of probative evidence undermines the societal interest in securing convictions of those who violate society's laws, the Supreme Court has nevertheless recognized that the "deterrent values of preventing the incrimination of those

whose rights the police have violated" sufficiently warrants the suppression of evidence in such cases. *United States v. Payner*, 447 U.S. 727, 734–35 n. 8, 100 S.Ct. 2439, 2445 n. 8, 65 L.Ed.2d 468 (1980).[3]

Section 3109, like the fourth amendment, has as its primary purpose the protection of legitimate expectations of privacy. *See Sabbath v. United States*, 391 U.S. 585, 589, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968). In fact, section 3109 is often described as being grounded in the fourth amendment. *See United States v. Comstock*, 805 F.2d 1194, 1209 n. 17 (5th Cir. 1986), *cert. denied*, 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 513 (1987) (observing that it appears that the "Supreme Court's view [is] that section 3109 mirrors Fourth Amendment values and may indeed simply replicate Fourth Amendment requirements"); *Ruminer*, 786 F.2d at 383; *see also United States v. Valenzuela*, 596 F.2d 824, 830 (9th Cir.), *cert. denied sub nom. Lizarraga v. United States*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979) (section 3109 requirements have been incorporated into the fourth amendment). Thus, to the extent that the fourth amendment and section 3109 are essentially coextensive, the applicable remedies—principally suppression—should likewise be identical.

However, as we have already observed, section 3109 lacks symmetry with the

---

**2.** Admittedly, we use the term "privacy" loosely. In *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Supreme Court observed that "the Fourth Amendment cannot be translated into a general constitutional 'right to privacy.' That Amendment protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all." *Id.* at 350, 88 S.Ct. at 510. The Court continued:

> The average man would very likely not have his feelings soothed any more by having his property seized openly than by having it seized privately and by stealth.... And a person can be just as much, if not more, irritated, annoyed and injured by an unceremonious public arrest by a policeman as he is by a seizure in the privacy of his office or home.

*Id.* at 350 n. 4, 88 S.Ct. at 510 n. 4 (quoting *Griswold v. Connecticut*, 381 U.S. 479, 509, 85 S.Ct. 1678, 1695, 14 L.Ed.2d 510 (1965) (Black, J., dissenting)).

**3.** In his concurrence, Judge Fernandez suggests that we might be giving the fourth amendment an unduly restrictive reading. Nonetheless, Judge Fernandez would deny standing to Lockett both under section 3109 *and* the fourth amendment. He apparently concedes that Lockett does not have a protected interest under the fourth amendment. *See generally Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978) ("[T]he question [of standing] is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect."). Thus, the entire panel agrees that Lockett does not have a protected fourth amendment interest— which is all that is relevant here. Nothing in this opinion should be read as detracting from the full panoply of rights guaranteed to individuals under the fourth amendment.

fourth amendment; the statute has secondary objectives not covered by the amendment. *See United States v. Garcia*, 741 F.2d 363, 366 n. 2 (11th Cir.1989) ("because the knock-and-announce statute protects interests not identical to those of the fourth amendment, ... the rules of standing for the two claims may diverge"). The safety of the police and occupants of the residence to be searched is a secondary objective of the statute. Since this objective differs from that of the fourth amendment, a person whose sole standing under section 3109 is based on this secondary objective should not be entitled to the same relief as a person whose standing is based on constitutionally-protected privacy concerns. *See United States v. Nolan*, 718 F.2d 589, 596 (3d Cir.1983) (suppression was imposed for § 3109 violations "in recognition of the shared common-law roots of that section and the fourth amendment").[4]

Indeed, the Supreme Court has warned against the overuse of suppression as a remedy. *See Payner*, 447 U.S. at 734–35, 100 S.Ct. at 2445–46. A federal court, the Court warned, should not use its supervisory powers to "suppress evidence tainted by gross illegalities that [do] not infringe the defendant's constitutional rights." *Id.* at 733, 100 S.Ct. at 2445. We take heed of this warning today. At best, Lockett has safety interest (as opposed to privacy interest) "standing" under section 3109. Such an interest, however, is not based upon an interest in privacy of constitutional magnitude. Under the reasoning of *Payner*, suppression is not an available remedy under such circumstances.[5]

The motion to suppress was properly denied.

## III

■ Lockett contends that the district court erred in allowing Portland Police Officer Derrick Foxworth to testify, as an expert, that only persons intimately involved with a cocaine packaging operation are usually allowed at the packaging site. Lockett does not dispute Foxworth's status as expert witness under Rule 704. By so testifying, Lockett argues, Foxworth was opining as to guilt. We review a district court's decision to permit the introduction of expert testimony for an abuse of discretion, and reverse only if manifest error is shown. *See United States v. Miller*, 874 F.2d 1255, 1266 (9th Cir.1989).

A witness is not permitted to give a direct opinion about the defendant's guilt or innocence. *See United States v. Kinsey*, 843 F.2d 383, 388 (9th Cir.), *cert. denied*, 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 75 (1988). With this caveat, however, an expert may otherwise testify regarding even an ultimate issue to be resolved by the trier of fact. *See id.* Foxworth's testimony falls in the latter classification rather than the former. Foxworth merely described a typical cocaine packaging operation. *See United States v. Arvin*, 900 F.2d 1385, 1389 (9th Cir.1990). The jury was left to determine, on its own, whether there was a cocaine distribution operation in the present case, and whether Lockett's presence was an exception to the general practice of cocaine packaging operations. Foxworth's testimony did not in-

---

**4.** This, of course, is not to say that a person's physical well-being is never within the purview of the fourth amendment. *See Garner v. Tennessee*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) ("there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment"). Thus, an unarmed suspect shot by a police officer might have a fourth amendment claim against the officer. *See id.* However, an innocent bystander struck by a stray bullet from the officer's weapon would not have such a claim. *See Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989) ("It is clear ... that a Fourth Amendment seizure does not

occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*") (emphasis in original).

**5.** What remedy, if any, might be available is beyond the scope of this opinion. We are not presented with a claim, for example, where Lockett could also allege physical injury.

vade the province of the jury. *See Kinsey,* 843 F.2d at 387–89 (expert properly testified that amount of cocaine found near defendant suggested an intent to distribute); *United States v. Espinosa,* 827 F.2d 604, 611–12 (9th Cir.1987) (police officer was properly allowed to testify regarding the criminal modus operandi of drug operations), *cert. denied,* 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988).

■ Lockett also argues that the testimony should have been excluded because the "expert testimony was not needed to explain 'innocent' actions." Appellant's Opening Brief at 19. We interpret this to be a challenge to the testimony under Federal Rule of Evidence 403. Lockett may be contending that the evidence's "probative value was substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403.[6] In *Espinosa,* we warned that "[a] trial court should not routinely admit opinions such as those admitted in the present case, but should carefully weigh the testimony's probative value against its possible prejudicial effect." *Espinosa,* 827 F.2d at 612. Here, however, the district court did not abuse its discretion in admitting the expert testimony. Lockett argued to the jury that he was not aware that cocaine packaging was occurring at the Thompson Street residence. *See* Defendant Counsel's Opening Statement, Reporter's Transcript at 28 ("[Defendant] did not know what was in that apartment when the police burst in. In other words, he not [sic] know that there was cocaine in that apartment."). The government is permitted to introduce evidence to rebut a defendant's claims. The objection to admission of Foxworth's testimony was properly overruled.

## IV

■ Lockett urges that the district court erred in denying his motion for a new trial. In support of his motion, Lockett offered an affidavit by Marcella Manning. This affidavit, Lockett asserts, is "newly discov-

ered evidence" within the meaning of Federal Rule of Criminal Procedure 41, and thus, he is entitled to a new trial. We review a district court's denial of a motion for new trial based on newly discovered evidence for an abuse of discretion. *See United States v. Endicott,* 869 F.2d 452, 454 (9th Cir.1989).

Marcella Manning appeared at Lockett's trial, but refused to testify. However, following Lockett's conviction, Manning provided Lockett with a sworn affidavit in which she claims that Lockett did not have any knowledge that cocaine was being delivered to the Thompson Street residence, that he did not assist in any way with the packaging of the cocaine, and that none of the packaging materials or cocaine belonged to Lockett. Manning stated that Lockett had been at the residence for only five to eight minutes before the police broke in. Manning stated that, if Lockett received a new trial, she would testify that Lockett had no knowledge of or involvement with the cocaine found at the Thompson Street residence, and that she at no time conspired with Lockett to distribute cocaine. The district court denied the motion.

In *United States v. Diggs,* 649 F.2d 731 (9th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981), we held that "[w]hen a defendant who has chosen not to testify comes forward to offer testimony exculpating a co-defendant, the evidence is not 'newly discovered.'" *Id.* at 740. Lockett concedes that *Diggs* controls this case, but argues that *Diggs* should be overruled and replaced with a rule that "newly available evidence" can constitute "newly discovered evidence." We, of course, lack the authority to grant Lockett's request to overrule *Diggs. See United States v. Salas,* 879 F.2d 530, 537 (9th Cir.), *cert denied,* — U.S. ——, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989) ("A three-judge panel of this court cannot disregard or overrule a prior decision of this court."). Moreover, on the facts of this case, we

---

**6.** "Prejudice does not mean that the defendant's case is merely damaged, for the more probative the evidence is, the more damaging it is apt to be.... Rather, prejudice outweighs probative value ... if the jury is basing its decision on something other than the established facts and legal propositions in the case." *United States v. Bowen,* 857 F.2d 1337, 1341 (9th Cir.1988).

would not be so inclined. We agree with Judge Friendly's observation that "a court must exercise great caution in considering evidence to be 'newly discovered' when it existed all along and was unavailable only because a co-defendant, since convicted, had availed himself of his privilege not to testify." *United States v. Jacobs,* 475 F.2d 270, 286 n. 33 (2d Cir.), *cert. denied sub nom. Lavelle v. United States,* 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973). The district court did not abuse its discretion in denying Lockett's motion for new trial.

## V

Finally, Lockett contends that the federal Sentencing Guidelines, under which he was sentenced, violate the due process clause of the fifth amendment by effectively transferring sentencing authority from the district court to the prosecutor. We considered and rejected this argument in *United States v. Sanchez,* 908 F.2d 1443, 1445–46 (9th Cir.1990); *see also United States v. Brady,* 895 F.2d 538, 541 (9th Cir.1990) (Sentencing Guidelines violate neither substantive nor procedural due process).

AFFIRMED.

FERNANDEZ, Circuit Judge, concurring:

I concur in the cogent majority opinion, but find that I cannot agree with all of the reasoning in Part II of that opinion.

In Part II the majority determines that Lockett has standing to raise the knock and announce issue, but that he cannot have a suppression remedy. I agree that he has no right to claim that remedy, but I do not believe he has standing in the first place.

The majority approach appears to be driven by too narrow a construction of the fourth amendment itself, a point of view that causes the majority to believe that 18 U.S.C. § 3109 goes much beyond the amendment. While admitting that the fourth amendment may in some circumstances reach beyond mere privacy concerns (see footnote 4), the majority still sees privacy as the real core of the amendment. That view is understandable, since

recent jurisprudence has focused upon the privacy aspect. Still and all, I believe it is incorrect.

It is my view that the safety emanations from the core of the fourth amendment are at least as important as its privacy emanations. The fear of a smashing in of doors by government agents is based upon much more than a concern that our privacy will be disturbed. It is based upon concern for our safety and the safety of our families. Indeed, the minions of dictators do not kick in doors for the mere purpose of satisfying some voyeuristic desire to peer around and then go about their business. Something much more malevolent and dangerous is afoot when they take those actions. It is that which strikes terror into the hearts of their victims. The fourth amendment protects us from that fear as much as it protects our privacy.

While the privacy paradigm has raised a mist before our eyes, no such brume afflicted our ancestors. The knock and announce requirement, including its safety purposes, was reported on by Sir Edward Coke. *See Semayne's Case,* 5 Coke's Rep. 91a (K.B.1603). And, as Justice Story indicated in his commentaries, the fourth amendment was designed to protect "personal security, personal liberty and private property." *See* J. Story, *Commentaries on the Constitution of the United States* § 1902 (2d ed. 1851). Those concerns go far beyond mere privacy interests.

Similar concerns have been expressed throughout our history. *See, e.g., Winston v. Lee,* 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) (personal security); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (knock and announce); *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921) (personal security), *overruled on other grounds,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886) (personal security), *overruled on other grounds,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In other words, the safety protection functions which inform

the knock and announce requirement are as much a part of the fourth amendment as the privacy function itself. As such, I do not agree that 18 U.S.C. § 3109 adds some extraordinary protection above and beyond that of the fourth amendment. There is, therefore, no reason to hold that section 3109 confers standing upon a person in Lockett's shoes, even though he would have no standing to assert fourth amendment rights.

Therefore, I do concur, but do so on grounds which bespeak a somewhat different view of the scope and power of the fourth amendment. I do so with the hope that we will not forget the full glory of that amendment and that we will continue to see that its brilliant light is made of a spectrum of colors, rather than the single one we see when we limit ourselves to using a privacy lens.