944 F.2d 909
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Martin K. MAURER, Plaintiff-Appellant,
v.
LOS ANGELES COUNTY, et al., Defendants-Appellees.
 No. 90-55778.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 6, 1991.*
Decided Sept. 20, 1991.
 
 Before GOODWIN, PREGERSON and ALARCON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Martin K. Maurer appeals in pro se from the orders granting summary judgment as to certain defendants and dismissal of the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as to the others. Maurer brought this action for alleged violations of his civil rights under 42 U.S.C. § 1983. Maurer raises 10 arguments on appeal, designated by him as "A" through "J." We discuss each issue in the same alphabetical sequence. We disagree with each of his contentions and affirm.
 
 DISCUSSION
 
 3
 A. Dismissal of Claims against Deputy Attorney Generals
 
 
 4
 Maurer seeks reversal of the order dismissing his claims against Deputy California State Attorney Generals Roger Boren and Ronald Ito pursuant to Rule 12(b)(6). He argues that he can prove "that the plaintiff was twice arrested in violation of the Fourth Amendment when defendant prosecutors cooperated with defendant sheriffs in obtaining two arrest warrants by intentionally suppressing facts regarding probable cause from the proper authorities; and that the defendant prosecutors attempted to have the plaintiff illegally killed by including a frivolous allegation in their criminal complaint." We review de novo a district court's dismissal under Rule 12(b)(6). Western Reserve Oil and Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir.1985), cert. denied, 474 U.S. 1056 (1986).
 
 
 5
 Prosecutors are absolutely immune from claims under 42 U.S.C. § 1983 for acts within the scope of their role as advocates. Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). Each of the activities of which Maurer complains were associated with the judicial phase of the proceedings against Maurer. The district court did not err in dismissing the claims against Boren and Ito.
 
 
 6
 B. "Standing" to Bring Action Over Search of Clubhouse
 
 
 7
 Maurer asserts that the district court erred in dismissing his claim for violation of his fourth amendment rights on the ground that "[p]laintiff lacks standing to challenge the entry into the Riders' Association 'clubhouse' on July 6, 1977, or the resulting search and seizure therein."[1] "A grant of summary judgment is reviewed de novo to determine whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of fact and whether the district court applied the relevant substantive law." Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989) (citing Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986)).
 
 
 8
 Maurer argues that he may challenge the legality of the search since he was present when the search took place. In support of this contention, Maurer cites Jones v. United States, 362 U.S. 257 (1960). This proposition is no longer an accurate statement of the law. See, Rakas v. Illinois, 439 U.S. 128, 142 (1978) (Jones does not stand for the principle that anyone legitimately on premises may challenge search).
 
 
 9
 Since Rakas v. Illinois, 439 U.S. 128 (1978), the Supreme Court has held that issues of standing are to be analyzed under Substantive Fourth Amendment doctrine. Accordingly, the defendant must have a "legitimate expectation of privacy in the item seized and the place searched." United States v. Pollack, 726 F.2d 1456, 1465 (9th Cir.1984) Defendant must exhibit "an actual (subjective) expectation of privacy [and that expectation is] one that society is prepared to recognize as reasonable." Smith v. Maryland, 442 U.S. 735, 740 (1979)....
 
 
 10
 It is clear that defendant's mere presence at the place searched would not give him standing. Rakas, 439 U.S. at 142-43.
 
 
 11
 United States v. Echegoyen, 799 F.2d 1271, 1277 (9th Cir.1986) (emphasis added) (citations omitted).
 
 
 12
 Maurer has the burden of proving that he had a legitimate expectation of privacy in the Rider's Association clubhouse. United States v. Lockett, 919 F.2d 585, 588 (9th Cir.1990) (citing, Rawlings v. Kentucky, 448 U.S. 98, 104 (1980)). "Fourth Amendment rights may not be vicariously asserted." Martinez v. Nygaard, 831 F.2d 822, 825 (9th Cir.1987) (citing Rakas, 439 U.S. at 133-34). To challenge the search Maurer must show that his legitimate expectations of privacy were violated. He cannot rely solely on the fourth amendment rights of the Rider's Association. Id.
 
 
 13
 Maurer presents no facts that demonstrate that he had a reasonable expectation of privacy concerning the club premises. He failed to show that he had a possessory interest in the place searched and the items seized, and the right to exclude others from the premises. Martinez, 831 F.2d at 826. "[M]embership in a criminal venture does not give a person an expectation of privacy in all property used by the venture. Rather, the defendant must show some 'joint control and supervision of the place searched.' " Lockett, 919 F.2d at 588 (quoting United States v. Pollack, 726 F.2d 1456, 1465 (9th Cir.1984)). Maurer has offered no evidence that he possessed any control or supervision over the clubhouse. Thus, the district court correctly held that Maurer can not challenge the warrantless search of the Rider's Association clubhouse.
 
 C. Warrantless Search of Clubhouse
 
 14
 Maurer asserts that the warrantless search of the clubhouse was unsupported by probable cause or exigent circumstances. As discussed above in section B, Maurer has not established that he had a reasonable expectation of privacy in the club's premises. He may not vicariously assert the rights of the Rider's Association. Accordingly we do not reach the question whether the search was justified or whether exigent circumstances excused a forced entry without a search warrant.
 
 D. Validity of the Warrantless Arrest
 
 15
 Maurer asserts that the district court erred in finding that his arrest without a warrant on July 6, 1977, following the forced entry into the clubhouse, for assault with intent to commit murder, receiving stolen property, cultivation of marijuana, possession of articles with the identification plate removed, and possession of controlled substance, was supported by probable cause. It is undisputed that Maurer was found in the common area of the club house along with two other individuals. In plain view were illegal narcotics, weapons, and stolen property. "Probable cause to arrest exists if at the moment of the arrest, the facts and circumstances known to the arresting officers are 'sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.' " United States v. Lindsey, 877 F.2d 777 (9th Cir.1989) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). We agree with the district court that the deputies had probable cause to believe that Maurer had committed or was committing one or more offenses at the time of the arrest.
 
 
 16
 E. Seizure of the Rider's Association's Records
 
 
 17
 Maurer asserts that when the deputies seized records of the Rider's Association on July 6th, they acted in violation of his fourth amendment rights. Maurer does not assert that these records were his, or that they were used against him. As discussed above in section B, Maurer may not vicariously assert the rights of the Rider's Association.
 
 
 18
 F. Collateral Estoppel Effect of Maurer's Murder Conviction
 
 
 19
 The district court held that Maurer was "estopped from challenging the constitutionality of his arrests for first degree murder and attempted armed robbery." Maurer asserts that the district court erred in finding that the constitutional validity of the two arrests was actually litigated and necessarily determined in the state court criminal proceedings. We agree.
 
 
 20
 Collateral estoppel can be invoked to bar relitigation of issues previously decided in a criminal action in a subsequent civil suit under section 1983. Allen v. McCurry, 449 U.S. 90, 103-104. (1980). "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979) (emphasis added) (citations omitted). We have previously stated:
 
 
 21
 The party asserting the estoppel bears the burden of pleading and proving what issues were decided in his favor in the previous action. Hernandez v. City of Los Angeles, 624 F.2d 935, 937 (9th Cir.1980).
 
 
 22
 If a court does not make specific findings, the party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. Hernandez, 624 F.2d at 937. Necessary inferences from the judgment, pleadings and evidence will be given preclusive effect. It there is doubt, however, collateral estoppel will not be applied. If the decision could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, collateral estoppel does not preclude relitigation of the asserted issue.
 
 
 23
 Davis & Cox v. Summa Corp., 751 F.2d 1507, 1518-19 (9th Cir.1985) (citations omitted). In Ayers v. City of Richmond, 895 F.2d 1267 (9th Cir.1990), we recently considered a claim of collateral estoppel based on a judgment of conviction in California court. In Ayers, as in the matter before us, the plaintiff filed a section 1983 action in which it was alleged that the arrest that led to his conviction violated his fourth amendment rights. Id. at 1269. We held in Ayers that collateral estoppel is inapplicable "unless the issue on which the prior conviction is offered must of necessity have been decided at the prior criminal trial." Id. at 1271. In analyzing the application of collateral estoppel to Ayers' claim, we determined that the constitutionality of his arrests had been necessarily litigated in hearings before the municipal court under California Penal Code § 1538.5.
 
 
 24
 The threshold issue in each fourth amendment violation alleged in Ayers' [1983] complaint is whether his arrests were constitutional. The municipal court denied Ayers' section 1538.5 motion to suppress evidence in the criminal actions on the basis the arrests were constitutional under the fourth amendment. The California standard for determining the constitutionality of an arrest is identical to that used when examining an arrest under the federal Constitution.
 
 
 25
 Id. at 1271 (citations omitted). We also noted that when the motions were denied, Ayers' "fully exercised his right to appeal those adverse rulings pre-trial." Id.
 
 
 26
 In this matter, appellees have failed to demonstrate that the legality of the arrests for murder was of necessity decided at the criminal trial resulting in Maurer's conviction. The issue at Maurer's trial for murder was whether the prosecutor had presented sufficient evidence to persuade a rational trier of fact that his guilt had been established beyond a reasonable doubt. Whether probable cause existed at the time a magistrate issued the arrest warrants was not a relevant issue at trial on the question whether the prosecutor met his burden of persuasion based on the evidence presented to the trier of fact. In Haring v. Prosise, 462 U.S. 306 (1983), the Supreme Court held that determination of guilt for the underlying offense does not estop a section 1983 claim for violation of fourth amendment rights if the fourth amendment claim was not actually and necessarily litigated at trial. Id. at 316. Accord, Ayers, at 1271.
 
 
 27
 Under California law, the fact that an arrest may be invalid does not affect the validity of a prosecution for the same crime. In People v. Valenti, 49 Cal.2d 199, 316 P.2d 633 (1957), disapproved on other grounds, People v. Sidener, 58 Cal.2d 645, 647, 375 P.2 641, 25 Cal.Rptr 697 (1962) the California Supreme Court stated:
 
 
 28
 [W]e know of no decision by any court of appellate jurisdiction in this state which holds or even suggests that when a defendant is illegally arrested for a public offense the illegality of the arrest permeates subsequent proceedings by which he is formally charged with the offense and tried on the formal charge.
 
 
 29
 Id. at 203. The logical bases for the California Supreme Court's statement in Valenti is obvious. It is quite possible that after a person has been arrested illegally for lack of probable cause, evidence of his guilt from an independent source may be discovered that is sufficient to establish guilt beyond a reasonable doubt. Under such circumstances, the judgment of conviction could be used to preclude relitigation of the factual issues resolved against the defendant by the trier of fact, including the acts constituting the crime, based on the proof presented by the prosecutor at the criminal trial. In the absence of a motion to suppress evidence seized as incident to an illegal arrest, the judgment of conviction could not resolve any questions concerning whether a sufficient showing was made to the magistrate that probable cause existed at the time of his arrest. The record does not demonstrate that the question of the legality of his arrest was presented in any pretrial proceeding, or to the trier of fact that decided Maurer's guilt.
 
 
 30
 Appellees' contention that collateral estoppel is applicable because the question whether probable cause existed to arrest Maurer was litigated by two magistrates demonstrates a lack of understanding of the law of this circuit. The issue on which the claim of collateral estoppel is based must, "of necessity," have been decided "at the prior criminal trial." Ayers at 1271. A determination by a magistrate that probable cause exists to support an arrest warrant is not made in an adversary proceeding during a criminal trial. Ordinarily, it is an ex parte proceeding that occurs before the person named in the warrant has counsel or appears in court. See, Cal. Penal Code § 813 (a warrant for the arrest of the defendant shall issue if there is reasonable cause to believe the defendant committed a public offense triable in the superior court). In fact, its purpose is to authorize the arrest of a person so that he may be brought before the magistrate. People v. Hinshaw, 194 Cal. 1, 9, 227 P. 156 (1924). Thus, prior to the issuance of a warrant, there is no opportunity to challenge its validity. After the arrest is made, the legality of the arrest has no bearing on the validity of the prosecution of the accused. Evidence seized as incident to an illegal arrest, however, may be excluded at trial. People v. Valenti, 49 Cal.2d at 203.
 
 
 31
 In Ayers, we found the doctrine of collateral estoppel applicable because the plaintiff in the civil rights action had litigated the legality of his arrest by making a motion to suppress. 895 F.2d at 1269. Appellees have not demonstrated that the legality of the arrest was litigated in connection with a motion to suppress the evidence at Maurer's criminal trial.
 
 
 32
 The fact that a preliminary hearing was held in this matter following the challenged arrest does not provide a foundation for the application of the doctrine of collateral estoppel. The issue at a preliminary hearing is whether the prosecutor has presented sufficient evidence to the magistrate to establish that a probable cause exists to believe that a crime has been committed by the accused. Cal. Penal Code § 872. Whether probable cause was presented in the application for an arrest warrant is irrelevant to the magistrate's function at a preliminary hearing, unless a motion to suppress the evidence seized as an incident to the arrest is made. Appellees have made no showing that the legality of the arrest was actually and necessarily litigated at the preliminary hearing. We note also that the first murder complaint was dismissed by the magistrate after Maurer's initial arrest on that charge. If the appellees' arguments were valid, the dismissal by the magistrate of the first murder complaint would collaterally estop the appellees from claiming that the arrest was lawful.
 
 
 33
 Because the legality of an arrest is not relevant at a criminal trial to determine the guilt of the defendant, a person who has been subjected to an illegal arrest by state officers in violation of his federal constitutional rights may seek civil damages in an action pursuant to section 1983. The county has failed to meet its burden to "introduce a record sufficient to reveal controlling facts and pinpoint exact issues litigated in the prior action" that demonstrate that the legality of the arrests was necessarily and actually litigated during Maurer's criminal trial. Hernandez v. City of Los Angeles, 624 F.2d 935, 937 (1980). The district court erred in applying the doctrine of collateral estoppel to Maurer's claim that his federal constitutional rights were violated when he was arrested on the murder charge.
 
 
 34
 While the district court erred in ruling that Maurer was estopped from challenging whether the arrests were based upon probable cause, "we may affirm the district court's decision based on any reason finding support in the record." Welch v. Fritz, 909 F.2d 1330, 1331, (9th Cir.1990). It is uncontested in this matter that the two arrests for murder were made subsequent to issuance of a warrant. In Smiddy v. Varney, 665 F.2d 261 (9th Cir.1981), cert. denied, 459 U.S. 829 (1982), we held that the filing of a complaint "immunizes investigating officers ... from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." Id. at 266. Maurer has not presented any evidence to rebut the presumption that the district attorney exercised independent judgment in filing the complaints.
 
 G. Probable Cause for the Arrest Warrants
 
 35
 The district court did not reach the question whether the challenged arrests were based upon probable cause because of its determination that collateral estoppel barred the illegal arrest claims. The county asserts that the issue regarding whether the warrants were supported by probable cause "was not an issue raised by any party below, including plaintiff (CR 188, CR 189)." County's Brief at 21. This is a mistatement of the record. The document cited by the County as Clerk's Record (CR) 189 is entitled PLAINTIFF'S OPPOSITION TO COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT; MEMORANDUM OF POINTS AND AUTHORITIES. Pages 62 through 66 of the Maurer's motion sets forth the probable cause statement in support of the first arrest warrant and the complaint in support of the second warrant. Pages 71 through 76 of the motion contain a lengthy analysis of the requirements for a constitutionally valid arrest warrant, and specifically challenges the absence of probable cause to support his arrest.
 
 
 36
 We have reviewed the record. We are persuaded that the warrants were not constitutionally deficient. The warrant issued on September 16, 1977, was supported by a summary of the facts related by three percipient witnesses that establish probable cause that Maurer committed the alleged crime. Maurer presented no evidence that the affiant deliberately or with reckless disregard for the truth included false statements in his application for the warrant. See, United States v. Castillo, 866 F.2d 1071, 1078 (9th Cir.1988) (warrant may be invalidated by showing knowing false statements).
 
 
 37
 The second warrant was issued on December 30, 1977. The magistrate was presented with the police reports and the statement of a witness who had personal knowledge of facts connecting Maurer to the crime of murder. The magistrate was presented with sufficient facts to establish probable cause for the arrest of Maurer. Because the record shows that the arrest warrants were supported by probable cause we conclude that Maurer has failed to demonstrate that his subsequent arrests violated his fourth amendment rights.
 
 H. Access to Evidence at Murder Trial
 
 38
 Maurer asserts that the defendants "concealed and suppressed the Rider's Association business records [seized on July 16, 1977] in order to prevent plaintiff from introducing such evidence in his defense on homicide charges...."
 
 
 39
 It is well established that the prosecution has the constitutional duty to disclose exculpatory information when requested by the defendant. Brady v. Maryland, 373 U.S. 83, 87 (1963). The Supreme Court has also held that the prosecution has the constitutional duty to disclose exculpatory material even without a request. United States v. Agurs, 427 U.S. 97, 107 (1976).
 
 
 40
 "The Brady rule is based on the requirement of due process. Its purpose is ... to ensure that a miscarriage of justice does not occur." United States v. Bagley, 473 U.S. 667, 675 (1985). In Agurs the Court recognized that Brady applies in three different situations. "Each involves the discovery, after trial of information which had been known to the prosecution but unknown to the defense." Agurs, 427 U.S. at 103 (emphasis added). See also, Bagley, 473 U.S. at 678 ("Agurs distinguished three situations involving the discovery, after trial, of information favorable to the accused that had been known to the prosecution but unknown to the defense.") Maurer has failed to demonstrate that there was a violation of the duty to disclose.
 
 
 41
 The record reflects that Maurer was aware that the police possessed records of the Rider's Association following the search of the clubhouse. In his first amended complaint, Maurer alleges that while he believed the records might have information which could be used to impeach the prosecution's witnesses, "the seizure of the [Rider's Association] documents and the concealment of the police reports, subject of this complaint, were not raised in any Court, though the matter was brought to the attention of plaintiff's counsel."
 
 I. Delay in Obtaining Police Reports
 
 42
 Maurer asserts that the defendants violated his rights under the due process clause because they "frustrated his efforts to prosecute this action by keeping from him the names of the officers conducting the search of the clubhouse through official policy or custom."
 
 
 43
 Maurer asserts no authority for the proposition that the fact there was a delay in delivering a copy of the police report to him violated his constitutional rights. The sole case relied upon by Maurer relates to the confiscation of legal documents by prison authorities. In that case, the actions of the government interfered with the appellant's right to direct appeal of his criminal conviction in the state courts. DeWitt v. Paul, 366 F.2d 682, 685 (9th Cir.1966). Maurer has not demonstrated that he was prejudiced by the delay in receiving the police report.
 
 J. Expungement of Arrest Records
 
 44
 Maurer asserts the district court erred in ruling that there was no basis to expunge his arrest record for the three challenged arrests. As discussed above in section D, Maurer's arrest on July 6, 1977, was supported by probable cause. In section G, supra, we have explained that Maurer has failed to demonstrate that the warrants issued for his arrest on the murder charges suffered from constitutional infirmities.
 
 
 45
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument pursuant to Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The county failed to respond to this question in its brief